# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEFFREY MICHAEL COLLARD,**
    **Plaintiff,**

  v.　　　　　　　　　　　　　　　　　　　　**Case Nos. 19-C-361 & 19-C-362**

**EMILY BLOZINSKI,**
    **Defendant.**

## ORDER

    Plaintiff Jeffrey Michael Collard, a former Wisconsin state prisoner who is representing himself, filed these lawsuits under 42 U.S.C. § 1983. Both cases were initially assigned to U.S. Magistrate Judge William E. Duffin but were referred to me for screening. I screened the plaintiff's complaints and allowed him to proceed in each case against Nurse Emily Blozinski. After the defendant answered both complaints, the cases were reassigned to me. I later granted the defendant's motion to consolidate the two cases into one, 19-C-361. ECF No. 27.[1] The defendant then moved for summary judgment. ECF No. 31. The motion is now fully briefed and ready for my decision. Both parties also have moved to restrict access to the medical records filed as exhibits. ECF Nos. 34 & 41. I will **GRANT** the defendant's motion and both parties' motions to restrict documents and **DISMISS** this case.

---

[1] All docket citations are to 19-C-361 except where noted otherwise.

# I. BACKGROUND[2]

## A. Plaintiff's Complaints[3]

The plaintiff filed a complaint in each case against the defendant and the Brown County Jail (the Jail), where the defendant works. ECF No. 33, ¶¶ 1, 5. In 19-C-361, he stated that he was denied medical attention for shoulder pain and pinched nerves in his neck. *Id.*, ¶ 6. The plaintiff asserted that he submitted three "Kiosk" requests for treatment, which went unanswered. *Id.*, ¶ 7. In 19-C-362, the plaintiff stated that he was being denied treatment for Barrett's disease, which causes his esophagus to shrink and makes swallowing difficult or impossible. *Id.*, ¶ 8. The plaintiff contended that he required a surgical procedure to stretch his esophagus, which he received in the past, but he did not receive that treatment at the Jail despite repeated requests. *Id.*, ¶¶ 8–9. In both cases, the plaintiff stated that unspecified Jail officials knew about his condition but refused to allow him to see a doctor and provided inadequate treatment.

Also in both cases, the plaintiff stated that the defendant reviewed his grievances about the inadequate treatment and concluded that his concern was "unfounded." ECF No. 33, ¶¶ 7, 10. He contended that the defendant failed adequately to investigate his

---

[2] Facts in this section are taken from the defendant's proposed findings of fact and declarations in support of her motion for summary judgment, ECF Nos. 33, 35–36, the plaintiff's response to the defendant's proposed facts and declaration in opposition to the defendant's motion, ECF No. 40 & 42, and the defendant's reply. ECF No. 45. I will consider each party's proposed facts only to the extent they are supported by evidence in the record. *See* Fed. R. Civ. Pro. 56(c)(1); Civil L. R. 56(b)(1)(C)(i) and (2)(B)(i)–(ii). I will deem admitted any uncontroverted fact, *see* Civil L. R. 56(b)(4), and will consider arguments in the supporting memoranda only to the extent they properly refer to each party's statement of facts, *see* Civil L. R. 56(b)(6).

[3] Because the plaintiff's complaint is verified, I will consider the contentions in the complaint as I would in an affidavit for purposes of this decision. *See Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013); *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996).

2

grievances or follow up about his treatment. ECF No. 40, ¶ 10.a. The plaintiff did not assert that the defendant personally provided treatment or was responsible for his medical care.

**B.  Nurse Blozinski and the Jail Health Services Unit (HSU)**

The defendant is a Licensed Practical Nurse who worked as a triage nurse in the HSU at the Jail while the plaintiff was an inmate. ECF No. 33, ¶ 13. She was not involved in the plaintiff's medical care or treatment and only responded to two inmate grievance forms he submitted regarding his medical treatment. *Id.*, ¶¶ 14–15, 91. Any other HSU nurse, physician, or staff member discussed in this decision is not a defendant in this lawsuit.

The defendant follows the Jail's triage system, under which inmates seeking non-emergency care must submit a formal medical request through the Jail's electronic Kiosk system. ECF No. 33, ¶¶ 16–18. A triage nurse reviews Kiosk requests and responds to the inmate's complaint based on his medical history and current treatment. *Id.*, ¶ 20. The response may include receiving medication or treatment orders, informing the inmate about on-going treatment, or scheduling services in or outside of the HSU. *Id.*, ¶ 21. Appointments generally are scheduled within one to two weeks, depending on staff and appointment availability. *Id.*, ¶ 23. If the inmate's complaint involves pre-existing or chronic conditions, HSU staff asks the inmate to allow the release of his medical history to the HSU for confirmation of the condition and previous care. *Id.*, ¶ 22. If the inmate has medication when he is admitted to the Jail, HSU staff verifies the prescription and requests the prescription from the Jail physician. *Id.*, ¶ 25. Only medical providers may order treatment or prescribe medications. *Id.*, ¶ 24.

3

The defendant asserts that the plaintiff did not suffer from a medical emergency at any time relevant to this lawsuit. ECF No. 33, ¶ 19. The plaintiff contends that he "feared choking to death," which "would consist with a man down situation." ECF No. 40, ¶ 20.a. He asserts that he had to wait sixty-eight days before receiving an appointment with a physician but was prescribed medication before that visit. *Id.*, ¶¶ 24.a, 25.a. The plaintiff cites no evidence for these propositions.

**C.    Initial Treatment**

The plaintiff was arrested in December 2018 and transported to a hospital, where he complained of chronic left shoulder pain. ECF No. 33, ¶¶ 26–27. The emergency room physical performed a physical but did not find any "acute medical condition" warranting immediate treatment. *Id.*, ¶ 28. The physician denied the plaintiff's request for narcotic medication to treat his chronic pain and approved his discharge to the Jail. *Id.*, ¶¶ 29–30.

The plaintiff entered the Jail as a pretrial detainee on December 27, 2018, was convicted of his pending charges on January 7, 2019, and remained at the Jail until March 12, 2019. ECF No. 33, ¶¶ 31–32; ECF No. 40, ¶ 32.a. When booked, the plaintiff reported that he suffered from a "torn shoulder" and pinched nerve in his neck, for which he had an outdated, October 2018 prescription for Vicodin and an anti-inflammatory medication. ECF No. 33, ¶¶ 33–36.

On December 29, 2019, the plaintiff submitted an electronic medical request through the Kiosk system for treatment of his left shoulder and pinched nerve. ECF No. 33, ¶ 37. An HSU nurse responded that the plaintiff would be seen for the next available appointment and told him to fill out a medical-release form because he

4

complained of a chronic condition. *Id.*, ¶ 38. The next day, a second HSU nurse met with the plaintiff about an altercation he had with another inmate and about his treatment request. *Id.*, ¶ 39. The nurse examined the plaintiff, noted limited mobility in his shoulder, and relayed the information to the Jail physician. *Id.*, ¶ 40. The physician prescribed an ice pack and ibuprofen for the plaintiff's pain. *Id.*, ¶ 41. The plaintiff accepted the ibuprofen but refused the ice pack. *Id.*, ¶¶ 43–44.

The plaintiff also submitted a medical release form to the HSU, which received his medical records on January 2, 2019. ECF No. 33, ¶¶ 42, 45. The plaintiff had previously been prescribed an anti-inflammatory, Vicodin for pain, and Diclofenac Sodium for pain and inflammation. *Id.*, ¶ 46. The HSU physician continued the Diclofenac Sodium, which was still valid, to treat the plaintiff's shoulder pain and swelling. *Id.*, ¶ 47. The plaintiff received that medication from January 3 through 18 but refused to take it January 19 and 20. *Id.*, ¶ 49.

**D.     Follow-up Treatment**

On January 4 and 10, 2019, the plaintiff submitted additional requests through the Kiosk system for treatment of acid reflux and esophageal issues. ECF No. 33, ¶ 50. HSU staff responded that the plaintiff would be seen at the next available appointment, and in the meantime he could purchase acid-reflux treatment from the canteen. *Id.*, ¶¶ 51–52. The plaintiff submitted a third request on January 11 and was told that he already had an appointment scheduled. *Id.*, ¶ 53. On January 13 and 14, the plaintiff requested ibuprofen for pain, and HSU staff again told him an appointment was scheduled. *Id.*, ¶¶ 54–55. The plaintiff asserts, without citing evidence, that he had been waiting six weeks for an appointment. ECF No. 40, ¶ 54.a.

5

On January 15, 2019, an HSU nurse visited the plaintiff and provided him ibuprofen, although the plaintiff told the nurse that the medication upset his stomach. ECF No. 33, ¶¶ 56–57. The same day HSU staff conducted a full physical on the plaintiff, noted his chronic shoulder issues, and provided the plaintiff information for managing that condition and his esophagus issues. *Id.*, ¶¶ 58–60. The HSU physician provided the plaintiff a prescription for seven more days of ibuprofen. *Id.*, ¶ 61. The plaintiff states he does not "recall[]" discussing whether ibuprofen upset his stomach and contends that HSU staff did not conduct a full physical but merely took his temperature and blood pressure. ECF No. 40, ¶¶ 58.a, 59.a. He also states that he was noticing atrophy in his left arm at the time. *Id.*, ¶ 60.A. The plaintiff's medical records show the full treatment he was given and that he told the HSU nurse "he would take the ibuprofen knowing it causes stomach issues because his left arm pain is worse than his stomach issues." ECF No. 35-1 at 24–26. The plaintiff cites no evidence supporting his statements or discrediting his medical records.

One week later, the plaintiff submitted a Kiosk request for a refill of his ibuprofen. ECF No. 33, ¶ 62. The Jail physician replaced the plaintiff's ibuprofen with Tylenol because it would not cause the same stomach issues as ibuprofen and prescribed Pantoprazole (a proton pump inhibitor) and a "bland diet" to treat the plaintiff's esophageal issues. *Id.*, ¶¶ 63–68. He received this treatment through March 4, 2019, but refused his medications on two days in February. *Id.*, ¶¶ 69–70. The plaintiff does not dispute the treatment he received but contends that the physician was merely treating his symptoms but not his difficulty swallowing, which caused acid reflux. ECF

6

No. 40, ¶¶ 66.A, 68.a. He argues that the medication alone was "not sufficient nor acceptable care . . . because the treatment was not making a difference." *Id.*, ¶ 70.a.

**E.     The Plaintiff's Grievances**

On January 23, 2019, the plaintiff submitted two inmate grievances. ECF No. 33, ¶ 71. In the first, he complained about receiving Tylenol instead of ibuprofen, stated that his arm muscles had begun to atrophy, and requested an MRI of his shoulder. *Id.*, ¶ 72; ECF No. 35-1 at 33. The defendant investigated the plaintiff's grievance and responded on January 28, 2019, having determined that the grievance was "unfounded." ECF No. 33, ¶¶ 73–74. She determined that it was appropriate to replace the ibuprofen with Tylenol because of the stomach side effects the plaintiff experienced and instructed the plaintiff to submit a formal medical request if the Tylenol did not help. *Id.*, ¶ 74. The defendant also instructed the plaintiff to complete an additional release of medical information so the Jail could determine whether he had a previous or previously scheduled MRI of his shoulder. *Id.*

The defendant based her response on a review of the plaintiff's medical records and the treatment he had received for his shoulder pain. ECF No. 33, ¶ 76. His records showed that he received continuous pain medication for his shoulder based on the Jail physician's recommendation. *Id.*, ¶ 77. Although the plaintiff disagreed with the medication he received, the defendant concluded that the switch to Tylenol was reasonable given the plaintiff's stomach issues. *Id.*, ¶ 78. The plaintiff appealed his grievance, and a different HSU nurse responded that ibuprofen was not recommended long-term "for those with significant gastrointestinal problems." *Id.*, ¶ 75.

7

In his second grievance, the plaintiff complained that HSU staff failed to treat his esophageal issues and refused to perform the esophagus-stretching procedure he claimed to have performed every few years. ECF No. 33, ¶ 79; ECF No. 35-1 at 32. The defendant investigated the grievance and, also on January 28, 2019, determined that it, too, was "unfounded." ECF No. 33, ¶ 80. The defendant again reviewed the plaintiff's medical records and noted that the plaintiff had been put on a bland diet and prescribed Pantoprazole to treat "his esophagus and acid reflux concerns." *Id.*, ¶¶ 82, 84–85; ECF No. 36, ¶ 12. She concluded that was reasonable treatment because acid reflux "is a common cause of esophageal discomfort." ECF No. 33, ¶ 86 (quoting ECF No. 36, ¶ 12). She again advised the plaintiff to complete a medical release form so the Jail could obtain his records related to his gastrointestinal issues and noted that "HSU is not contacted with your difficulty eating, going forward it's important to have nursing staff notified of concerns after mealtime." *Id.*, ¶ 81; ECF No. 35-1 at 35.

The plaintiff contends that he first complained to the HSU about his gastrointestinal issues and difficulty swallowing on December 29, 2018, but he cites no evidence in support of that statement. ECF No. 40, ¶¶ 82.A, 86.a. The plaintiff disputes whether the defendant performed an adequate investigation because, he asserts, she would have known that his concern was based on his fear of choking to death. *Id.*, ¶ 77.a. He also asserts that the HSU should have followed up with his previous healthcare provider to determine whether he needed to undergo the procedure to stretch his esophagus. *Id.*, ¶ 88.a.

The plaintiff appealed the denial of his second grievance. ECF No. 33, ¶ 83. In February 2019, when an HSU nurse reviewed the appeal, the HSU had received the

8

plaintiff's past gastrointestinal medical records. *Id.*, ¶ 87. Those records showed that in November 2016, the plaintiff underwent the esophagus-stretching procedure and was advised to take medicine for acid reflux, avoid ibuprofen, and take Tylenol for pain. *Id.*, ¶¶ 88–90; ECF 35-2 at 8. But the records did not contain any recommendation or order for the plaintiff to undergo a repeat medical procedure to treat his esophageal issues. *Id.*, ¶¶ 83, 87; ECF No. 36, ¶ 13.

### F. The Plaintiff's Subsequent Treatment

The defendant states that the plaintiff did not submit a medical request form identifying Barrett's disease until January 29, 2019, when he discussed the procedure he had undergone before being incarcerated at the Jail. ECF No. 33, ¶ 92. An HSU nurse responded and instructed the plaintiff to submit an additional medical release form to allow HSU staff to review his records relating to the procedure. *Id.*, ¶ 93. Although the plaintiff does not dispute that his first mention of Barrett's disease in a medical request was on January 29, 2019, he contends that his December 29, 2018 medical request adequately alerted staff to his issues by "stating his issues with eating and need for a procedure every 2-3 years." ECF No. 40, ¶ 93.a.

In February 2019, the Jail physician honored the plaintiff's demand to discontinue the bland diet and extended his Pantoprazole prescription through May 2019. ECF No. 33, ¶¶ 94–97. In March 2019, the physician increased the dosage for that prescription and ordered the plaintiff to follow a liquid diet for two days. *Id.*, ¶ 99. Also in March 2019, an HSU nurse performed a comprehensive physical exam of the plaintiff, including a respiratory exam, in response to his complaints of vomiting and difficulty breathing. *Id.*, ¶¶ 100–01. The nurse reported to the physician that the plaintiff's lungs

9

and trachea were clear of liquid. *Id.*, ¶ 101; ECF No. 35-1 at 41. The physician examined the plaintiff two days later for his complaints of painful or difficulty swallowing and continued left shoulder pain. ECF No. 33, ¶ 102. The physician reviewed the newly received medical records showing that the plaintiff had undergone the esophagus-stretching procedure and an MRI of his shoulder and ordered further treatment for both conditions. *Id.*, ¶¶ 103–04. The physician prescribed medication to treat the plaintiff's swallowing issues, pain, and inflammation. *Id.*, ¶¶ 105–07; ECF No. 35-1 at 42–43. The plaintiff does not dispute that he received the medications but asserts that they treated only his symptoms and did not cure his underlying issues. ECF No. 40, ¶¶ 106.a–108.a.

The plaintiff transferred out of the Jail on March 12, 2019. ECF No. 33, ¶ 108. He returned from March 29 through April 2, 2019, and again from May 3 through 7, 2019. *Id.*, ¶¶ 109, 112. During the plaintiff's two brief returns, the Jail physician restarted his medications for his swallowing issues and shoulder pain. *Id.*, ¶¶ 110–11, 113.

## II. ANALYSIS

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

**A. Eighth Amendment Standard**

The plaintiff was a pretrial detainee at the Jail until January 7, 2019, when he sentence began. The relevant events for this litigation occurred after that date. The plaintiff's claims are therefore reviewed under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that she had a "sufficiently culpable state of mind." *Id.* A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837).

Disagreement about the course of treatment does not present a proper claim under § 1983. *Estelle*, 429 U.S. at 107; *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106).

11

Although the plaintiff claims that his medical treatment was inadequate, those claims do not involve the defendant, who never personally examined or treated the plaintiff. The plaintiff provides no basis to hold the defendant liable for the medical treatment from other HSU staff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting that to present a proper claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

**B.     Grievances**

The plaintiff's only claim against the defendant is that she failed adequately to investigate his grievances or follow up about his purportedly inadequate treatment. The plaintiff has no inherent constitutional right to a prison grievance system. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore, the defendant may not be held liable for merely ruling against the plaintiff on his grievances. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). But the plaintiff may have a claim for deliberate indifference if the defendant improperly handled his grievance and allowed the plaintiff "to face risks that could be averted by faithful implementation of the grievance machinery." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Examples of improper handling of a grievance could include sending "each grievance to the shredder without reading it" or "interven[ing] to prevent the medical unit from delivering needed care." *Id.* (citing cases).

I noted in the screening order in each case that the defendant could be liable if she, as a nurse, "did nothing to ensure that the plaintiff received any medical attention." ECF No. 11 at 6 (19-C-361); ECF No. 8 at 6 (19-C-362). But the plaintiff provides no evidence to support a claim of deliberate indifference against the defendant on that

12

basis. In rejecting the plaintiff's grievances as unfounded, the defendant relied on the plaintiff's medical records. Those records show that HSU staff responded to the plaintiff's complaints about problems with his shoulder by prescribing him ibuprofen and an ice pack and advising him to submit medical release forms to allow consistent treatment. When the HSU received those records, they adjusted the plaintiff's treatment as needed by continuing his one valid prescription; adjusting his ibuprofen to Tylenol, as his previous physician had recommended; and prescribing him new medication to treat his acid reflux and esophageal issues. The defendant confirmed that these treatments were reasonable based on the plaintiff's records available at the time. She also advised the plaintiff to authorize additional medical releases to the HSU so they could continue to adjust his treatment as needed. When the HSU received additional medical records verifying the plaintiff's problems swallowing and past treatment for his condition, the HSU followed that recommended treatment. Contrary to the plaintiff's assertions, there was no order or recommendation in the plaintiff's records that he undergo a repeat procedure to stretch his esophagus. There is no evidence that the defendant improperly handled the plaintiff's grievances, prevented him from obtaining medical treatment, or deliberately disregarded his medical conditions or concern about his treatment.

The plaintiff asserts that his medical treatment was inadequate to address his issues, particular his problems swallowing and his Barrett's disease. His only evidence showing his previous complaints is in his Exhibit A (ECF No. 42-1), which he only generally cites throughout his brief in opposition. It is not the court's job "'to scour the record looking for factual disputes.'" *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (quoting *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)).

Nonetheless, I have reviewed the exhibit and found one document (which the defendant also submitted) that confirms that on December 29, 2018, the plaintiff complained that his "throat has shrunk to where [I] can barely swallow food-[I] get my throat stretched every few years and am due." ECF No. 42-1 at 15 (also ECF No. 35-1 at 8). The plaintiff had been seen by HSU staff the day before, December 28, 2018, but the report of that encounter says nothing about his issues swallowing and addresses only his shoulder pain. *Id.* at 14. The plaintiff received an immediate response to his December 29, 2018, grievance and was seen for treatment the next day. ECF No. 35-1 at 9. He again brought up his shoulder pain and stated that he "wishe[d] to discuss all his medical needs at this time." *Id.* There is no mention in that document of Barrett's disease or his problems swallowing. The same day, by recommendation of the HSU staff who treated him, the plaintiff submitted a medical release form for any treatment involving his throat. *Id.* at 11. He submitted a second medical request about his throat issues on January 10, 2019. ECF No. 42-1 at 23; ECF No. 35-1 at 19. HSU staff saw him about that complaint on January 15, 2019, and documented his esophagus issues as a condition not requiring medical treatment. ECF No. 35-1 at 24–25. Contrary to the defendant's assertion, however, the plaintiff's medical requests show he complained about his Barrett's disease by name as early as January 21 and 22, 2019. ECF No. 42-1 at 24–25. On January 23, 2019, he was prescribed the bland diet and Pantoprazole to treat his acid reflux. ECF No. 35-1 at 28. The same day, he submitted his grievances that form the basis for this lawsuit. *Id.* at 32–33.

The plaintiff may have an argument that treatment of his Barrett's disease should have come earlier than January 23, 2019, given his requests (although they were

14

vague) for treatment of his swallowing difficulties on December 29, 2018, and January 10, 2019. But as discussed above, the defendant had no role in the plaintiff's delayed medical treatment, so she cannot be held liable for it. Nor did the defendant respond to his grievances in a way that prevented him from receiving adequate treatment. She concluded, based on the plaintiff's medical records, that his treatment had been appropriate and recommended that he submit a medical release to provide the HSU with records documenting his condition and prior treatment. The plaintiff submitted evidence showing that he had, in fact, submitted past medical requests about his difficulty swallowing. But he does not assert that the defendant was, or should have been aware, of those past medical requests. And the only mention of this issue in his medical records, which the defendant did review, is in one document that lists his "history of esophageal shrinking" as not requiring medical treatment. ECF No. 35-1 at 25. It was therefore reasonable for the defendant to conclude, based on the plaintiff's medical records, that the HSU had reviewed the plaintiff's concerns and determined that he did not require immediate treatment for his esophagus or swallowing issues.

The defendant, at the time, also did not have the plaintiff's gastrointestinal records showing that he had previously undergone the esophagus-stretching procedure. Those records came only after the plaintiff followed the defendant's advisement and submitted an additional medical release form. But there was no order or recommendation in those updated records that the plaintiff undergo that procedure again, contradicting his assertions. Once the HSU received the medical records, it reviewed the records and adjusted its treatment of his condition. Any dissatisfaction with his treatment after the defendant responded to his grievances cannot be attributed to

15

her because she neither took part in his treatment nor reviewed any future grievances about it. Because the plaintiff fails to provide evidence showing that the defendant used the grievance procedures to thwart his attempts at receiving proper medical treatment, she is entitled to judgment as a matter of law.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment (ECF No. 31) is **GRANTED**. The motions to restrict access to the medical record exhibits (ECF Nos. 34 and 41) are **GRANTED**. These cases are **DISMISSED**. The clerk's office shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. I may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I may not extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 5th day of May, 2020.

s/Lynn Adelman
LYNN ADELMAN
District Judge